UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

GERMAINE RAINES,

                Plaintiff,

                                  Case No. 2:21-cv-108

v.

                                  Honorable Robert J. Jonker

UNKNOWN PARTIES #1 et al.,

                Defendants.

_____/

## OPINION

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Martin, Horton, Kubont, Kelly, Foster, James, Carlson, Green, Holdwick, Osier, Huss, Unknown Parties #1, Unknown Party #3, and Jones. The Court will also dismiss, for failure to state a claim, Plaintiff's First and Fourteenth Amendment and PREA claims against Defendants Hares, Harris, and Unknown Party #2.  Upon initial review, the Court is satisfied that Eighth Amendment claims against Defendants Harves, Harris and Unknown Party # 2 survive screening.

<u>**Discussion**</u>

I.     **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan and the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan.

Plaintiff sues the following officials who were employed at URF during the pertinent time period: Unknown Parties #1 named as 5 Unknown Officers at URF, PREA Coordinator Sergeant Unknown Martin, Unknown Party #2 named as Unknown Nurse at URF, and Warden Connie Horton. Plaintiff also sues MBP Registered Nurses Unknown Kubont, Unknown Kelly, Adam Foster, B. James, and D. Carlson, MBP Mental Health Staff Unknown Green, Unknown Harris, Daniel Holdwick, and Thomas Osier, MBP Mental Health Chief Mark Hares[1], Unknown Party #3 MBP PREA Coordinator, MBP Warden Erica Huss, and Inspector/PREA Coordinator Unknown Jones.

A.     **The Original Prisoner Assault & Reports at URF**

Plaintiff alleges that in the evening hours of September 13, 2020, he was confined in Neebish Unit at URF when Unknown Parties #1, named as Defendants "5 Unknown Officers URF" in the complaint, decided to walk out of the unit because they did not want to deal with a small group of inmates who were upset about another inmate being tased. Consequently, a riot broke out and vulnerable inmates such as Plaintiff were left unprotected. In the early hours of

---

[1] Plaintiff initially names this Defendants as Mark Hores but refers to him as Mark Hares thereafter. Therefore, the Court will use Hares when addressing Plaintiff's claims against this individual.

2

September 14, 2020, Plaintiff was unable to hold his urine any longer and attempted to make his way to the C-wing bathroom. At this point, Plaintiff was attacked by three unknown masked assailants, who threw a sheet over Plaintiff's head and wrapped an extension cord around his neck. Two of the assailants pinned Plaintiff to the ground and pulled his pants down, exposing Plaintiff's buttocks. The third assailant then anally raped Plaintiff with his fingers and penis. About five minutes later, Plaintiff heard inmate Keith "K" Thomas yell, "What the fuck is going on?" (ECF No. 9, PageID.96.) Inmate Keith Thomas and another unknown inmate then fought off Plaintiff's assailants and removed the sheet and cord from Plaintiff's head and neck.

Plaintiff attaches the affidavits of Prisoners Keith Thomas and Kenyetta Nalls to his amended complaint. (ECF 9-1, PageID.119-122.) Plaintiff attached the affidavit of Bernard Hardrick to his initial complaint. (ECF No. 1-9, PageID.55–56.) In their affidavits, Prisoners Thomas, Nalls, and Hardick attest that they discovered Plaintiff being sexually assaulted by three masked prisoners and that they proceeded to fight off Plaintiff's attackers and rescue him.

After staff regained control of the unit, Plaintiff was taken to the gym along with a group of other prisoners. Plaintiff asked to see a captain so he could report the rape, but was completely ignored. Plaintiff was too embarrassed to report the rape in front of other prisoners, but he whispered to a nurse, Unknown Party #2, that he needed medical attention because he had been sexually assaulted. Defendant Unknown Party #2 simply shook her head and said, "We're a little busy right now obviously." (ECF No. 9, PageID.97.) Defendant Unknown Party #2 never sought to evaluate Plaintiff or provide him with medical care. Plaintiff filed a PREA grievance, but it was not processed by Defendant Martin.

B.      **Transfer to Alger**

That afternoon, Plaintiff was emergency transferred to Alger Correctional Facility (LMF) and he reported the sexual assault to health care services during intake. Plaintiff submitted a health care request kite as instructed, but he was not evaluated or treated.

C.      **Transfer to MBP**

1.      **Initial Reports**

Three days later, Plaintiff was transferred to MBP. Upon his arrival at MBP, Plaintiff reported the sexual assault to medical and mental health staff in-person, by filing kites, and eventually by filing grievances. Plaintiff states that he asked Defendant Kubont for an HIV test and she told him that because of COVID-19, health care was not taking any other cases unless they were life-threatening. At this point, Plaintiff had already filed six health care request kites.

On October 15, 2020, Plaintiff submitted two more PREA grievances regarding the sexual assault and the lack of medical and mental health treatment. Plaintiff filed one PREA grievance at MBP and sent the other to URF. Shortly thereafter, Plaintiff told Defendant Huss about the sexual assault while Defendant Huss was making rounds in the unit. Defendant Huss told Plaintiff that she did not know why the PREA grievances had not been processed and indicated that health care staff at MBP should have assessed Plaintiff in accordance with PREA policy.

On October 28, 2020, Plaintiff caught Defendant Hares while he was making rounds in the unit and told him about the sexual assault. Defendant Hares informed Plaintiff that he was aware of the PREA complaint and had received Plaintiff's kites requesting psychological treatment. However, Defendant Hares told Plaintiff that the contents of his PREA complaint did not require immediate psychological treatment. Plaintiff responded that he had been in mental anguish for a month and Defendant Hares stated that someone from Mental Health would speak to him soon.

### 2.      Medical and Mental Health Grievances

Plaintiff filed grievances against medical and mental health staff on October 30, 2020. On November 5, 2020, Defendant Green denied Plaintiff's grievance on Mental Health stating that there were no kites on record from Plaintiff requesting mental or medical health services. Plaintiff then began submitting multiple health care kites to Defendant Green informing him of the mental anguish that he had suffered from the sexual assault and rape, and requested mental health treatment, but Defendant Green did not respond. During November and December of 2020, Plaintiff submitted several kites seeking mental health and medical treatment, to no avail. On November 23, 2020, Plaintiff received a response from Defendant Holdwick stating that Plaintiff had been scheduled to consult with a Case Manager, but no one was available that week.

On November 10, 2020, Plaintiff filed a step II PREA grievance appeal with the PREA Coordinator at MBP and sent a step II PREA grievance appeal to Defendant Martin at URF. On November 22, 2020, Plaintiff filed a step II grievance appeal regarding the denial of medical treatment. Plaintiff's appeal was denied by Defendant Huss on December 8, 2020. On November 30, 2020, Plaintiff received a response to a kite request for HIV testing from Defendant Adam Foster, who stated that he did not see a recent fight/assault and that if Plaintiff had been exposed to bodily fluids, he should submit another health care kite.

### 3.      Responses to Various Kites and Grievances

On December 9, 2020, Plaintiff's PREA grievance was finally processed by MBP Grievance Coordinator, who explained that because Plaintiff's PREA complaint was not considered an emergency, it had been delayed while the prison administration dealt with COVID-19 issues. Defendant then met with Defendant Kelly, who asked if Plaintiff would like to be assessed for an HIV test. Defendant Kelly stated that she only became aware of Plaintiff's

sexual assault after his PREA grievance had been processed. Plaintiff informed Defendant Kelly of his rectal bleeding and psychological trauma and Defendant Kelly stated that he would be called over to medical within a week for testing and proper assessment.

On December 12, 2020, Defendant Foster responded to one of Plaintiff's kites by stating that lab work had been ordered and that Plaintiff would be scheduled for an appointment. On December 22, 2020, Plaintiff was told by an unknown medical assistant that there was a signed order for him to be tested for HIV.

On January 7, 2021, Defendant Harris came to Plaintiff's cell side to evaluate his mental health status. Plaintiff told Defendant Harris that he was not comfortable discussing the sexual assault where he could be overheard by other prisoners. Defendant Harris told Plaintiff that the Brooks Center, where they would normally be able to consult in private, was not open due to the COVID-19 pandemic. Plaintiff asked to consult via teleconference and Defendant Harris walked away from Plaintiff's cell.

On January 26, 2021, submitted another kite requesting HIV testing. On January 29, 2021, Plaintiff received a response from Defendant Foster stating that all lab work was delayed because of COVID restrictions, and that Plaintiff would receive a callout when they got to his place on the waitlist. Plaintiff then filed grievances against mental health staff and medical staff. In the grievances, Plaintiff detailed his rectal bleeding, stress, anxiety, restlessness, and homicidal/suicidal thoughts. Plaintiff states that while he was being denied treatment, he was unable to function normally and ceased taking showers.

On February 3, 2021, Defendant Green denied Plaintiff's grievance, stating that Plaintiff had only filed one kite requesting mental health treatment. Plaintiff also states that Defendant Green violated policy in responding to the grievance because he was a subject of the grievance.

Sometime later in February of 2021, Plaintiff finally received an HIV test. Plaintiff states that his grievance regarding the delay in treatment at MBP was denied by Defendants James and Carlson, who stated that although Plaintiff had filed a PREA grievance, documentation did not exist to show that Plaintiff had complained of ongoing injuries, nor was there evidence that an RN had told him he would be seen.

On February 17, 2021, Plaintiff filed a health care kite notifying medical staff that it was his eighth kite and asking why he had not been seen. Defendant Foster responded to the kite by stating that kites were for medical problems and Plaintiff should list the symptoms he was experiencing. Plaintiff submitted mental health kites on February 7, 2021, and February 24, 2021. Defendant Hares responded by telling Plaintiff that mental health services were not authorized to conduct treatment in the Brooks Center.

Defendant Harris attempted to interview Plaintiff on March 10, 2021, and March 31, 2021, but Plaintiff refused to discuss the sexual assault within earshot of other prisoners. Defendant Harris told Plaintiff that there was nothing else he could do for Plaintiff until the Brooks Center was available for use.

During March of 2021, Plaintiff spoke with the Deputy Warden, Doug Tasson, and Resident Unit Manager Ericson concerning the failure to conduct an investigation of his PREA grievances and the attempts by mental health staff to discuss Plaintiff's sexual assault in front of other prisoners. Tasson told Plaintiff that he did not know why PREA Coordinators failed to conduct an investigation and stated that Plaintiff should grieve the issue. Tasson also said that he did not understand why mental health staff could not use other private areas of the prison to interview Plaintiff. Resident Unit Manager Ericson told Plaintiff that she believed that PREA Coordinators were not handling the matter in accordance with policy and that she would look into

the matter, and that she would inform mental health staff that they could use a private area in D-block to interview Plaintiff.

On March 22, 2021, Plaintiff filed grievances against Defendants Martin and James regarding their failure to conduct an investigation related to his PREA grievances. On March 30, 2021, Defendant Hares attempted to interview Plaintiff while standing at Plaintiff's cell door, but Plaintiff told him that he did not feel comfortable discussing his sexual assault within earshot of other prisoners. Defendant Hares stated that Plaintiff's PREA allegations were not serious enough to warrant a secret meeting and stormed off. Plaintiff subsequently raised the issue with Defendant Huss, who told Plaintiff that she did not get involved with medical or mental health issues. However, she did note that mental health staff had access to other private areas in the prison facility to conduct psychological evaluations, and that she was not sure why Defendant Hares was not utilizing them. Plaintiff also complained about the failure to investigate his PREA complaints in a timely manner and Defendant Huss replied that she did not involve herself in PREA related issues and there was nothing she could do.

Plaintiff states that he has still not received treatment for injuries incurred as a result of his sexual assault, which constitutes a violation of prison policy, the Eighth Amendment, and the Prison Rape Elimination Act (PREA). Plaintiff seeks compensatory, nominal, and punitive damages, as well as declaratory relief.

## II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

8

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Violation of MDOC Policy

Plaintiff claims that the handling of his PREA grievances by Defendants Martin, James, Carlson, Green, Unknown Party #3, and Jones violated MDOC Policy. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United

States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

Moreover, Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Nor was Plaintiff's right to petition government violated by Defendants' failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).

The actions of Defendants Martin, James, Carlson, Green, Unknown Party #3, and Jones have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to,

10

and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858–59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff's assertion that Defendants Martin, James, Carlson, Green, Unknown Party #3, and Jones violated MDOC policy fails to state a cognizable claim.

### B.    Violation of PREA

The Court notes that Plaintiff's claim that Defendants Martin, James, Carlson, Green, Unknown Party #3, and Jones violated PREA is properly dismissed because the PREA statute does not provide prisoners with a private right of action.

The magistrate judge also did not err in her determination that the PREA does not provide prisoners with a private right of action. "[W]here the text and structure of

a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002). Numerous Courts that have addressed this issue have determined that the PREA provides no private right of action to individual prisoners. *See, e.g., Hill v. Hickman County Jail, 2015 WL 5009301 (M.D. Tenn. August 21, 2015)*; *Montgomery v. Harper*, 2014 WL 4104163, at *3 (W.D. Ky. Aug. 19, 2014) ("[T]his Court concludes that the PREA creates no private right of action."); *Chapman v. Willis*, 2013 WL 2322947, at *4 (W.D. Va. May 28, 2013) ("There is no basis in law for a private cause of action to enforce a PREA violation."); *Holloway v. Dep't of Corr.*, 2013 WL 628648, at *2 (D. Conn. Feb. 20, 2013) ("There is nothing in the PREA that suggests that Congress intended it to create a private right of action for inmates to sue prison officials for non-compliance to the Act."); *Faz v. N. Kern State Prison*, 2011 WL 4565918, at *5 (E.D. Cal. Sept. 29, 2011) ("[T]he PREA does not create a private right of action ...."); *Woodstock v. Golder*, 2011 WL 1060566, at *9 (D. Colo. Feb. 7, 2011) ("PREA provides no private right of action.") (citation omitted). "The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue....The statute does not grant prisoners any specific rights." *Chinnici v. Edwards*, 2008 WL 3851294, at *3 (D. Vt. Aug. 12, 2008).

*Peterson v. Burris*, No. 14-CV-13000, 2016 WL 67528, at *2 (E.D. Mich. Jan. 6, 2016).

### C.    Respondeat Superior

Moreover, the Court notes that Plaintiff fails to make specific factual allegations against Defendants Horton and Huss, other than his claim that they failed to properly supervise their subordinates or to ensure that an adequate PREA investigation was conducted in response to his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may

not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Horton and Huss engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### D.    Defendant Osier

The Court notes that Plaintiff fails to make any allegations regarding the conduct of Defendant Osier in the body of his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at

*1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails to even mention Defendant Osier in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

### E.     Eighth Amendment

Plaintiff asserts violations of the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

14

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1.    Defendants Unknown Parties #1 named as 5 Unknown Officers

Plaintiff claims that Defendants Unknown Parties #1 named as 5 Unknown Officers violated his Eighth Amendment rights when they abandoned their posts because it created conditions under which Plaintiff was sexually assaulted. Among the protections of the Eighth Amendment, inmates have a constitutionally protected right to personal safety. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). Nevertheless, "[a]lthough 'prison officials have a duty [under the Eighth Amendment] to protect prisoners from

violence at the hands of other prisoners,' it is equally clear that not 'every injury suffered by one

prisoner at the hands of another . . . translates into constitutional liability for prison officials.'"

*Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021) (citations and internal quotation marks omitted)

(quoting *Farmer*, 511 U.S. at 833–34). In order to state a failure-to-protect claim, a plaintiff must

demonstrate (1) that he "objectively" was "incarcerated under conditions posing a substantial risk

of serious harm," *Farmer*, 511 U.S. at 834, and (2) that the official acted with "deliberate

indifference" to inmate safety, "meaning the official was 'subjectively aware of the risk' and

'fail[ed] to take reasonable measures to abate it.'" *Reedy*, 988 F.3d at 912 (quoting *Farmer*, 511

U.S. at 829, 834, 847; *see also Greene v. Bowles,* 361 F.3d 290, 293–94 (6th Cir. 2004) (addressing

whether knowing placement of a small, transgender female in a unit with a known predatory inmate

amounted to deliberate indifference). In establishing the objective prong, although a prisoner does

not need to prove that he has been the victim of an actual attack to bring a personal-safety claim,

he must at least establish that he reasonably fears such an attack. *Thompson v. Cty. of Medina*, 29

F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a

sufficient inferential connection" between the alleged violation and inmate violence to "justify a

reasonable fear for personal safety.")

Plaintiff alleges that the five officers decided to walk out of the unit because they did not

want to deal with a small group of inmates who were upset about another inmate being tased and

that a riot ensued, which placed Plaintiff and other vulnerable inmates at risk. Plaintiff states that

he was assaulted by other prisoners while attempting to make his way to the bathroom during the

early hours of September 14, 2020. The Court concludes that Plaintiff's allegations against

Defendants Unknown Parties #1 are insufficient to show that they acted with deliberate

indifference towards Plaintiff's safety. Plaintiff fails to make specific allegations regarding the

events which led to Defendants Unknown Parties #1 leaving the unit, including whether they left because they were under attack by inmates and were forced out or left to get help to deal with an escalating situation. Because Plaintiff does not allege facts showing that Defendants Unknown Parties #1 were subjectively aware of the risk to Plaintiff and failed to take reasonable measures to abate the risk, his Eighth Amendment claims against Defendants Unknown Parties #1 are properly dismissed.

### 2.      Defendants Kubont, Kelly, Foster, and Holdwick

Plaintiff alleges that a few days after he was assaulted, he was transferred to MBP, whereupon he asked Defendant Kubont for an HIV test. Defendant Kubont told Plaintiff that because of COVID-19, health care was not taking any other cases unless they were life-threatening. Plaintiff does not assert that he had any other interactions with Defendant Kubont. At this point, Plaintiff was not showing any signs of illness. Plaintiff's PREA grievance had not yet been processed. There is no indication that Defendant Kubont was aware of any facts indicating that Plaintiff required immediate testing for HIV. Accordingly, the Court concludes that the denial of an HIV test at this point did not constitute the type of conduct that violates that Eighth Amendment.

Plaintiff alleges that on December 20, 2020, Defendant Kelly asked him if he wanted an HIV test and told Plaintiff that he would be called to health care within a week for testing and assessment. Defendant Kelly stated that she had just become aware of the assault on Plaintiff as a result of the PREA being processed. As noted above, the Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). According to the allegations in Plaintiff's complaint, Defendant Kelly attempted to schedule testing and assessment for Plaintiff once she became aware of the fact that he had been sexually assaulted. Because Plaintiff fails to allege any

facts showing that Defendant Kelly was deliberately indifferent to Plaintiff's medical needs, his Eighth Amendment claim against Defendant Kelly is properly dismissed.

Plaintiff alleges that on November 30, 2020, Defendant Foster stated that he did not see any evidence of a recent assault in Plaintiff's records and advised Plaintiff to kite health care. On December 12, 2020, Defendant Foster responded to a kite by stating that lab tests had been ordered and that Plaintiff would be scheduled for an appointment. On January 29, 2021, Defendant Foster indicated in a kite response that all labs were delayed because of COVID, but that Plaintiff would be called out. On February 17, 2021, Defendant Foster responded to a kite regarding the delay in HIV testing by stating that kites were for medical issues and to list his symptoms. As with Defendant Kelly, Plaintiff's allegations against Defendant Foster merely demonstrate that he was responding to Plaintiff's requests by attempting to schedule testing and assessment. Such conduct does not constitute deliberate indifference. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Foster is properly dismissed.

Nor does Plaintiff allege conduct constituting deliberate indifference on the part of Defendant Holdwick. The only allegations against Defendant Holdwick are that he responded to a kite on November 23, 2020, by stating that Plaintiff had been scheduled for a consultation with a mental health case manager, but that no one was available that week. Therefore, Plaintiff's Eighth Amendment claim against Defendant Holdwick is properly dismissed.

### 3.     Defendants Hares, Harris, and Unknown Party #2

Plaintiff alleges that Defendants Hares and Harris repeatedly refused to interview him in private regarding his sexual assault, which denied Plaintiff prompt mental health treatment. Plaintiff states that this was unnecessary because Defendant Huss indicated that there were private areas in the prison which mental health personnel could use to conduct an interview. Plaintiff also alleges that Defendant Unknown Party #2 denied him any type of treatment or assessment

18

immediately following his sexual assault on the day that it occurred. The Court concludes that on the face of the complaint, these allegations are sufficient to state a claim under the Eighth Amendment. Therefore, Plaintiff's Eighth Amendment claims against Defendants Hares, Harris, and Unknown Party #2 may not be dismissed on initial review.

<u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Martin, Horton, Kubont, Kelly, Foster, James, Carlson, Green, Holdwick, Osier, Huss, Unknown Parties #1, Unknown Party #3, and Jones will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's First and Fourteenth Amendment and PREA claims against Defendants Hares, Harris, and Unknown Party #2. Plaintiff's Eighth Amendment claims against Defendants Hares, Harris, and Unknown Party #2 remain in the case.

An order consistent with this opinion will be entered.


Dated:    May 23, 2022            /s/ Robert J. Jonker
                                  ROBERT J. JONKER
                                  CHIEF UNITED STATES DISTRICT JUDGE